UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OKSANA KOTOK,

                Plaintiff,

v.

NANCY A. BERRYHILL,

                Defendant.

CASE NO. C17-191-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

Oksana Kotok seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred by failing to include a severe impairment at step two of the five-step evaluation process, failing to fully account for her limited ability to communicate in English, misevaluating the medical opinions of Mario G. Alinea, M.D.; and issuing an erroneous adverse credibility determination. Dkt. 10. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Ms. Kotok is currently 42 years old, has at least a high school education, and has worked as a housekeeper cleaner, hand packager, and cleaner II. Tr. 31, 67. On February 5, 2013, she applied for benefits, alleging disability as of July 15, 2009. Tr. 22. Her applications were denied

initially and on reconsideration. *Id*. The ALJ conducted a hearing on December 30, 2014, finding Ms. Kotok not disabled. Tr. 33.

Utilizing the five-step disability evaluation process,[1] the ALJ found Ms. Kotok met the insured status requirements through December 31, 2014; had not engaged in substantial gainful activity since the alleged onset date; and that she has severe impairments of status post-left ankle surgery and ligament reconstruction. Tr. 25. The ALJ found Ms. Kotok had the RFC to perform light work but that she could only occasionally lift and carry 20 pounds and frequently lift and carry 10; she can stand/walk for 2 hours out of 8; she can sit for 6 hours out of 8; she can climb ramps, stairs, and ladders occasionally; she can frequently crawl and kneel; she can occasionally balance, stoop, and crouch; she must avoid concentrated exposure to vibration and other hazardous conditions; and she should not be required to read instructions or write reports in English and has limited communication in English. Tr. 26. The ALJ found Ms. Kotok could not perform any past relevant work; however, after finding she "is able to communicate in English," the ALJ concluded there are other jobs that exist in significant numbers in the national economy. Tr. 31. As the Appeals Council denied Ms. Kotok's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-9.

**DISCUSSION**

**A.    Ms. Kotok Has Failed to Meet her Burden at Step Two**

At step two of the five-step sequential evaluation process, the ALJ found Ms. Kotok had severe impairments of status post-left ankle surgery and ligament reconstruction. Tr. 25. Ms. Kotok contends the ALJ should have also found she had a severe impairment of degenerative disc disease. Dkt. 10 at 6-8.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

At step two, Ms. Kotok has the burden of proof to show that (1) she has medically determinable impairments; and (2) her medically determinable impairments are severe. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); §§ 404.1520(c), 416.920(c), 404.1505, 416.905. An impairment is *medically determinable* if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1508, 416.908; 20 C.F.R. §§ 404.1513(a), 416.913(a). An impairment is *severe* if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 404.1521, 416.920, 416.921. "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

Ms. Kotok contends the ALJ ignored findings regarding her degenerative disc disease. As a result, she contends the RFC fails to account for additional postural limitations due to her back pain. Dkt. 10 at 5. She points to evidence from examining doctor Garry Gaffield indicating she had crepitus in the sacroiliac areas bilaterally, with "some pain [on] percussion of the thoracic spine, especially the upper segments," and she had "[l]ow back pain from a previous work injury, aggravated by her left ankle condition." Dkt. 10 at 7; Tr. 889-90. Ms. Kotok also points to workers' compensation claim findings indicating she had tenderness to very light palpation in the paralumbar area and she had a bulging disc in her lumbar spine. Dkt. 10 at 7-8 (citing Tr. 596, 598). In discussing these records at step two, the ALJ omitted the findings. Tr.

25. Rather, the ALJ's discussion of the records noted Ms. Kotok complained of pain while straightening her back after bending forward and touching her knees; she had normal range of motion with extension and side-bending, no pain with simulated compression or rotation, negative straight leg raise (SLR) results in the seated position but positive results in the supine position, deep tendon reflexes were 2+, equal, and bilaterally symmetric at the patella and Achilles; her motor strength was intact in all myotomes of the lower extremities; she had a normal sensory exam; after physical therapy in 2010 SLR testing was negative bilaterally; and she had full range of motion of the lumbar spine. Tr. 25 (citing Tr. 561, 596, 608, 889-90). The ALJ also observed that a MRI of the lumbar spine showed a disc bulge with "mild mass effect on the right greater than left" nerve roots. *Id.*

On this record, the Court cannot say the ALJ improperly interpreted the evidence to suggest Ms. Kotok's back impairment was not severe. Ms. Kotok points to no objective medical evidence that her back impairment had more than a minimal effect on her ability to work or that it has prevented her from engaging in basic work activities. Indeed, she fails to explain how her impairments would result in any specific work-related limitations. But even assuming the ALJ erred, Ms. Kotok has not shown the error was harmful. She argues an "appropriate RFC would have more postural limitations due to her back pain." Dkt. 10 at 9. But Dr. Gaffield attributed Ms. Kotok's *lifting and carrying* limitations to back issues — to the extent he limited postural activities, this was due to "left ankle weakness, weakness of her left knee, and her obesity." Tr. 891. Thus, incorporation of the portions of the provider's opinions the ALJ omitted would not result, as Ms. Kotok contends, in more postural limitations due to back pain. Furthermore, the limitations Dr. Gaffield attributed to Ms. Kotok's back condition have already been incorporated in her RFC. Tr. 26, 891.

Ms. Kotok also asserts the fact that she had a Russian (rather than Ukrainian) interpreter during the medical examination that served as the basis for the July 2010 workers' compensation claim "raises concerns as to how well the examiner was able to understand [her] communications about her impairments." Dkt. 10 at 8. The Court is unable to make out any step-two argument from this vague statement. If Ms. Kotok's intent is to question the reliability of this record, she has failed to do so. Elsewhere in her brief she observes the ALJ assigned the examination "significant weight," but argues only that the ALJ erred in evaluating a different opinion. *See* Dkt. 10 at 10. Ms. Kotok never directly challenges the ALJ's treatment of this record. The Court may deem arguments that are unsupported by explanation to be waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (*citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)). Thus, to the extent Ms. Kotok intended to raise any additional step-two or other arguments here, those arguments have been waived.

**B.      The ALJ Erred in Evaluating Impacts from Limited English Proficiency**

Ms. Kotok also contends the ALJ erred in his assessment of her ability to communicate in English. In the RFC/hypothetical posed to the Vocational Expert ("VE"), the ALJ found Ms. Kotok had "limited communication in English" and restricted her to jobs that would not require her to read instructions or write reports in English. Tr. 26, 59. At step five, however, the ALJ found Ms. Kotok "is able to communicate in English." Tr. 31. Ms. Kotok contends the ALJ's decision is internally inconsistent, and argues the RFC should have been more restrictive to accommodate her difficulties with the English language, including "restrictions on working with the general public on a regular basis, or sustained interaction with coworkers." Dkt. 10 at 9, 13.

The Commissioner concedes the ALJ's findings are "confusing," but contends any error is harmless because the decision ultimately accommodates any limitations relating to Ms. Kotok's limited English. Dkt. 11 at 10. The Court disagrees.

English proficiency is a vocational factor typically assessed at step five of the sequential analysis. 20 C.F.R. §§ 404.1564, 416.964. A claimant's education generally falls into one of four categories: (1) illiteracy, meaning the inability to read or write "a simple message such as instructions or inventory lists"; (2) marginal education, which generally translates to formal schooling at a 6th grade level or less; (2) limited education, which generally translates to formal education between a 7th and 11th grade education; and (4) high school education and above, which generally translates to formal schooling at a 12th grade level or above. *Id*. The ALJ's decision found Ms. Kotok had "limited communication in English," she should be restricted to jobs that would not require her to read instructions or write reports in English, *and* that she has at least a high school education and is "able to communicate in English."[2] Tr. 26, 31. Without explanation, these findings are not reconcilable. The procedural error was not without harm.

The Commissioner offers a flawed defense of the ALJ's procedural errors, and in so doing, demonstrates she has not met her burden at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999) (At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that takes into consideration her residual functional capacity, age, education, and work experience.). First, the Commissioner contends any error in factoring in a high school education was harmless because Ms. Kotok would still be found not disabled under the Medical-Vocational Guidelines ("grids") if the ALJ had considered someone who is

---

[2] Ms. Kotok testified she was raised in and completed high school in the Ukriane, she took accounting courses in the United States but looked to her peers for explanations, and she requires an interpreter at medical appointments. Tr. 47, 54.

illiterate or unable to communicate in English. Dkt. 11 at 11 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.16). At step five, the ALJ found that if Ms. Kotok had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. Tr. 32. That rule directs that a younger individual who is a high school graduate or more with non-transferable "skilled or semi-skilled" previous work experience is "not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.16. But the Commissioner's observation about the grids here fails to rectify any error because the ALJ did not merely rely on the grids at step five; he also found Ms. Kotok's occupational base had been eroded by additional limitations[3] and therefore consulted a Vocational Expert (VE). Tr. 32.

The ALJ's hypothetical required the VE to consider someone who would "not be required to read instructions or write reports in English and would have limited communication in English, if you can take that into account." Tr. 59. Here the Commissioner contends the ALJ's errors were rendered harmless because the VE "responded to a hypothetical" which included Ms. Kotok's educational limitations. Dkt. 11 at 11. The argument is not borne out by the record, and furthermore, the ALJ also erred in his treatment of the VE's testimony. Although the hypothetical posed to the VE included some communication limitations, neither the ALJ nor the VE addressed how those limitations would impact her ability to find and perform the jobs identified by the VE in the hearing. *See* Tr. 56-65. Indeed, beyond the recitation of the hypothetical, there was no further discussion of Ms. Kotok's language limitations. *Id.* The VE opined a person with Ms. Kotok's limitations could perform the alternative jobs of die loader, DOT 726.687-030 (6,000 jobs existing nationally and 180 regionally); final assembler, DOT

---

[3] The ALJ did not identify what nonexertional limitations he considered, but included in Ms. Kotok's RFC limitations on crawling, kneeling, balancing, stooping, crouching, exposures to vibration and hazardous conditions, and reading/writing/communicating in English. Tr. 26, 32.

713.687-018 (6,500 jobs existing nationally and 160 regionally); and patcher, DOT 723.687-010 (6,200 jobs existing nationally and 130 regionally). Tr. 59. An ALJ has an affirmative duty to inquire as to whether a VE's testimony is consistent with the Dictionary of Occupational titles ("DOT"), and may only rely on testimony that conflicts with the DOT if the conflict is reasonably explained. *Massachi v. Astrue*, 486 F.3d 1149, 1150, 1152-54 (9th Cir. 2007). The ALJ made no such inquiry, but nevertheless, stated he "determined that the vocational expert's testimony is consistent with the information contained in the DOT." Tr. 32; 56-65. But the record suggests a discrepancy may in fact exist: under DOT 713.687-018 and DOT 723.687-010, a final assembler and patcher must possess "Level 1" language skills. DOT 713.687-018, 1991 WL 679271; DOT 723.687-010, 1991 WL 679524. The worker must "[r]ecognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95–120 words per minute. Compare similarities and differences between words and between series of numbers." *Id*. In addition, the worker should be able to "[p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses," and "[s]peak simple sentences, using normal word order, and present and past tenses." *Id*. On the other hand, a die loader must possess "Level 2" language skills, requiring a "[p]assive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes." DOT 726.687-030, 1991 WL 679637. The worker must be able to "[w]rite compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs." *Id.* She must also be able to "[s]peak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses." *Id.* The ALJ's failure to expressly ask the

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 8

VE whether his testimony was consistent with the DOT is not harmless, particularly where, as here, the ALJ also made conflicting findings regarding Ms. Kotok's education level at step five. At a minimum, the ALJ should have sought out an explanation regarding how Ms. Kotok's level of English proficiency compares with the DOT's language skills requirements.

Even assuming Ms. Kotok can perform the jobs posited by the VE requiring only Level 1 language skills, the error is still not harmless. Under harmless error review, the Court must determine whether jobs exist in significant numbers either regionally or nationally. *Gutierrez v. Comm'r, Soc. Sec. Admin.*, 740 F.3d 519, 523-24 (9th Cir. 2014). The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs," but instead finds a "comparison to other cases ... instructive." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). In *Gutierrez*, the Ninth Circuit held that whether 25,000 jobs nationally is significant is "a close call." *Id.* at 529. Here, only 12,700 jobs exist after eliminating the Level 2 language skills position of die loader.[4] DOT 713.687-018, 1991 WL 679271; DOT 723.687-010, 1991 WL 679524. This number is not a "close call" — it is clearly insignificant. A combined number of 290[5] jobs regionally is also likely insignificant. *See, e.g., Little v. Berryhill*, No. 14-35408, 2017 WL 1952039, at *2 (9th Cir. May 8, 2017) (195 jobs regionally are not significant)*; Gutierrez*, 740 F.3d at 523 (2,500 jobs regionally are significant); *Beltran*, 700 F.3d at 389-90 (135 regional jobs are not significant); *Gray v. Comm'r, Soc. Sec. Admin.*, No. 09-35212, 365 Fed. Appx. 60, 2010 WL 440581, at *3 (9th Cir. 2010) (980 jobs in Oregon and 59,000 jobs nationally

---

[4] Only 18,700 jobs exist nationally including both Level 1 and Level 2 language skills jobs. DOT 713.687-018, 1991 WL 679271; DOT 723.687-010, 1991 WL 679524; DOT 726.687-030, 1991 WL 679637.

[5] DOT 713.687-018, 1991 WL 679271; DOT 723.687-010, 1991 WL 679524

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 9

significant).[6] In any case, whether 290 jobs regionally is a significant number of jobs is a determination reserved for the ALJ to decide in the first instance.

In short, the ALJ failed to make clear the educational factors he weighed into his ultimate disability finding and the error was not harmless. On remand, the ALJ shall clarify his assessment of Ms. Kotok's proficiency in the English language, and shall clearly consider how any limitations in her ability to communicate in English would impact her ability to perform jobs otherwise available to her. The ALJ's decision on remand shall also directly address whether any jobs identified that Ms. Kotok can perform exist in significant numbers in the economy.

**C.  The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

Ms. Kotok also argues the ALJ misevaluated the medical opinions of Mario G. Alinea, M.D. An ALJ should generally give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Id.* at 830-31.

The ALJ assigned "very little" weight to

> the multiple, check-box forms indicating that the claimant was either unable to work for various periods and/or at a reduced RFC, because it is unclear what evidence the medical professional(s) may have relied on. . . . Although medical records were attached to

---

[6] *See also Valencia v. Astrue*, No. C11–06223, 2013 WL 1209353, at *18 (N.D.Cal. Mar. 25, 2013) (114 regional jobs and 14,082 national jobs not significant); *Cardona v. Colvin*, No. EDCV 12–0895–CW, 2013 WL 2285354, at *5 (C.D.Cal. May 22, 2013) (remand appropriate for ALJ to determine in first instance whether 300 regional jobs and 9,000 national jobs significant).

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 10

> these template forms, the medical provider did not link them to the
> check-box forms through a narrative explanation. It is also
> repeatedly mentioned in these attached medical records that the
> claimant was not working due to being laid-off, and not because
> she was unable to perform work itself.

Tr. 30-31 (citing Tr. 650, 654, 661, 665, 673, 677, 681, 683, 688, 692, 700, 702, 710, 722, 726, 733, 739, 746, 750, 756, 758, 766, 770, 772, 839-57, 859, 952-55, 958). Ms. Kotok contends the ALJ's reasoning is deficient because "it is clear" the forms are linked to the chart notes as they are dated the same day, and because it is "unreasonable" to "require additional integration beyond what was presented in those records." Dkt. 10 at 14. But the ALJ's reasoning goes beyond simply finding a failure to integrate the treatments notes with the doctor's opinions. Rather, the ALJ found no narrative *explanation* for the doctor's check-box opinions that Ms. Kotok could not work or could work at a reduced RFC. Tr. 30-31. This is a valid reason to reject the opinions. *See Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physician's opinions may be discounted when it is "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the claimant's condition], and was based on [the claimant's] subjective descriptions of pain[,]" as well as when that opinion is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]"); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). The reasoning is also supported by the record. For example, in December 2009, Dr. Alinea declined to release Ms. Kotok to any work. Tr. 650. The accompanying treatment notes diagnose lumbosacral sprain, report pain at a 6/10, state Ms. Kotok is not working because she was laid off, discuss current medications, indicate Ms. Kotok denied any new signs or symptoms, discuss an MRI showing a disc bulge, and include a low back exam revealing tenderness on palpation and some limitations to range of motion. Tr. 651-55. In March 2010, treatments notes

were largely similar except Ms. Kotok had an IME done "and they agreed this is an occupational disease and she requires PT and injections." Tr. 662-69. On this date, however, Dr. Alinea opined Ms. Kotok could perform modified work without climbing, twisting, bending, crawling, or reaching. Tr. 661. The following month, Dr. Alinea again opined Ms. Kotok should not work, though the treatment notes were consistent with the previous assessments. Tr. 677-85. As the Commissioner notes, the pattern of vacillating opinions continues, despite largely consistent treatment notes. Dkt. 11 at 6 (citing Tr. 710, 712-13, 722, 725-26, 733, 738-39, 750, 757-58, 766, 771-72, 850-51, 852). Finally, in January 2014, Dr. Alinea opined Ms. Kotok could perform modified work with limitations in standing/walking, twisting, and bending. Tr. 953-55. No explanation was offered, though he recommended Ms. Kotok obtain a second MRI. Tr. 958. The Court finds the ALJ gave specific and legitimate reasons for rejecting Dr. Alinea's assessments.[7]

### D. The ALJ Gave Valid Reasons for Discounting Ms. Kotok's Credibility

The ALJ provided three reasons for discounting Ms. Kotok's credibility; Ms. Kotok challenges only one. Tr. 27-29. The ALJ found Ms. Kotok was unemployed because she was laid off, and "not because she was unable to perform the assigned tasks." Tr. 29. This is a valid reason for discounting a claimant's credibility. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Citing Dr. Alinea's opinions, Ms. Kotok contends the record shows she was in fact unable to perform her job duties. Dkt. 10 at 12. Additionally, Ms. Kotok points to a December 2009 treatment note indicating she was not working because she was placed on "time loss"

---

[7] The ALJ's reasoning that Ms. Kotok left her job for reasons other than her alleged impairments is not a specific and legitimate basis for rejecting a doctor's opinion. This reasoning may only be used to discount a claimant's credibility. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). However, the error is harmless because it was inconsequential to the ultimate nondisability decision. *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012).

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 12

benefits by her employer. *Id.* (citing Tr. 638). The evidence Ms. Kotok relies upon to show she was unable to perform her job duties does not support her argument because, as discussed above, the ALJ properly rejected Dr. Alinea's opinions. Additionally, the ALJ cited to numerous records stating Ms. Kotok did not work because she was laid off. Tr. 29, 31 (citing 607, 654, 665, 681, 683, 692, 700, 702, 726, 739, 756, 758, 770, 772, 952, 958). Accordingly, substantial evidence supports the ALJ's conclusion. But even assuming the record inaccurately reflected the reason why Ms. Kotok was no longer working, the ALJ offered another valid reason for discounting Ms. Kotok's credibility which she does not address.

The ALJ also found Ms. Kotok's allegations were inconsistent with the medical evidence of record. Tr. 27-29. The ALJ cited evidence that Ms. Kotok walked normally; completed full deep-knee bends; her reflexes were 2+ bilaterally; she had intact sensation; she did not need an assistive device; she had good balance during heel and toe walks; she had good muscle strength; she appeared to be in no apparent distress post-left ankle surgery; she had negative Romberg and Babinski testing, she had good range of motion of the post-op ankle; and, in 2014, her providers noted inconsistent motor functioning in the lower limbs that was "counterintuitive" and "nonphysiologic." *Id.* The reasoning is not contested. In weighing a claimant's testimony, an ALJ properly considers "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly considers failure to give "maximum or consistent effort" on examination in assessing credibility). Therefore, this was also a valid reason for discounting Ms. Kotok's credibility.

Finally, the ALJ discounted Ms. Kotok's allegations because they were inconsistent with her reported daily activities, "including personal care, basic cooking, laundry, driving, shopping and knitting." Tr. 29 (citing 239-46; 286-93). Ms. Kotok's function reports described taking longer to complete these activities due to pain. Tr. 239-46; 286-93. A claimant "does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). However, a claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony"; or that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Court finds the ALJ's reasoning was not valid because Ms. Kotok's daily activities were not clearly inconsistent with her testimony that she is unable to stand or walk for more than 10 minutes at a time. *See* Tr. 27.

The ALJ's credibility determination was not error-free; however, Ms. Kotok has not established that the ALJ's valid reasons for discounting her credibility were erroneous. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility is at most harmless error). Accordingly, the ALJ's credibility determination is affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g)

On remand, the ALJ shall clarify his assessment of Ms. Kotok's proficiency in the English language, and shall clearly consider how any limitations in her ability to communicate in English would impact her ability to perform jobs otherwise available to her. The ALJ's decision

1 on remand shall also directly address whether any jobs identified that Ms. Kotok can perform

2 exist in significant numbers in the economy.

3 DATED this 5th day of July, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 15